THOMAS DURELL *versus* DANIEL MERRILL, in Error

The report of referees upon a rule of reference entered into before a justice of
the peace must be made to the Court of Common Pleas holden *next after* the
award made. If the Court had *commenced* its session previous to making the
award, the report of the referees cannot be returned to and accepted at *that*
term; if it be, and judgment is rendered thereon, such judgment will be
reversed on a writ of error. Costs not allowed where judgment is reversed
for *error in law.*

THIS was a writ of error brought upon a judgment of the Court
of Common Pleas in this county, rendered on an award of referees
to whom the parties had submitted their disputes under a rule en-
tered into and acknowledged before a justice of the peace, as pro
vided in the statute of July 7, 1786, (*stat.* 1786, *c.* 21.)

It appeared by the record and process that the parties entered
into the rule on the 24th day of October, 1801; that the referees
met and heard the parties on the 3d, 13th, and 14th days of Au-
gust, 1802, at which last-mentioned day they made an award;
which was not returned to the Court of Common Pleas which sat
subsequent to that day, in the same month; that afterwards, on the
21st, 26th, and 28th days of October, in the same year, the parties
were further heard by the referees, who on the day last aforesaid,
made their final award, which was dated on the same day, returned
to, entered at, and accepted by the Court of Common Pleas the'
holden in and for this county, the session whereof commenced on
the *twenty-sixth* day of the same October, and judgment rendered
according to the award, in favor of *Merrill,* the defendant in
error.

The errors assigned were, *First,* that it appears by the record and
process aforesaid, that the agreement aforesaid was signed by the
said parties and acknowledged in due form on the 24th
[ * 412 ] day of August, * 1801, (*a*) and that the report aforesaid
was not presented to or accepted at the *next* Court of
Common Pleas after that time, as by law required. *Secondly,* that
it appears by the record and process aforesaid, that the said report
was made, signed, and completed, on the 28th day of October, 1802,
and not before; and that the same report was accepted at the said
Court of Common Pleas holden at ———— aforesaid, on the said last
*Tuesday* of October, being the 26th day of the same month;
whereas the same report ought, by law, to have been presented to
and accepted (if accepted at all) at the Court of Common Pleas

(*a*) So in the *original* assignment

holden at ———, within and for said county, on the third *Tuesday* of April, 1803, being the court next after the completion of said report. And, *thirdly*, the general error.

The defendant in error pleaded *in nullo est erratum*.

This case was argued at a former term. And now, *P. Mellen*, for the plaintiff in error, cited two cases which had been determined in the county of *Middlesex*, in which judgments of the Court of Sessions, allowing and establishing highways, had been reversed, in *this* Court, because the reports of the committees, appointed to lay out the same, had not been returned to the term next after the service had been performed. The words of the statute directing the method of laying out highways, so far as they relate to the point decided by the court in those cases, are, "that the committee shall make return of their doings to the *next* Court of General Sessions of the Peace to be held in the same county, after the service is performed; to the end the same may be accepted, allowed, and recorded." In the *third section* of the act under which the present judgment was rendered, the provision is similar; it is, "that the determination of the referees who may be appointed *agreeably to the act, shall be made to the *next* Court [ * 413 ] of Common Pleas to be holden in and for the county in which the justice of the peace may have lived at the time he issued the agreement," &c. In this case, the report was not made to the court which was holden next after the submission of the dispute, nor next after the award made; for the *first* he said that he did not contend; but the obvious meaning was that the report must be returned to the court holden next after it was made. He instanced the case of an appeal made from the judgment of a justice of the peace to the Court of Common Pleas during the session of the court, in which it had never been holden that the appeal could be entered until the term of the court which *commenced* next subsequent to the day on which the appeal was made. He also cited the case of *Brown* vs. *Compton*, 8 *Term Rep.* 424, as being similar to the case now before the Court.

*Wallingford*, for the defendant in error, argued that the judgment could be supported, upon a fair construction of the whole statute taken together; that it was obvious from the title of the act and the several provisions contained in it, that the legislature intended to provide for a speedy and equitable mode of deciding civil causes. It had prescribed the *form* of the rule of submission, by which it appears that "the report of the referees was to be made as soon as may be to *any* Court of Common Pleas to be holden in and for the county" in which the rule was entered into; that in the 3d *section* of the act it was also provided that the Court of Common Pleas to

DURELL *vs.* MERRILL, in Error.

whom the report of the referees may be made as aforesaid, shall have cognizance thereof in the same way and manner, and the same doings shall be had thereon, as though the same had been made by referees appointed by a rule of the same [ *414 ] court." *By the *form* of the rule prescribed by the legislature, it is evident that the report might be made to *any* Court of Common Pleas which might be holden in the county; and, therefore, the word "next," in that part of the 3d *section* of the act relied upon by the counsel for the plaintiff in error, could not mean that the court, to whom the report of the referees should be made, was to *commence* its session after making the report; especially when it is considered that in that part of the *same section* of the act which is above recited, the court has *general* powers on the subject—the same powers as though the award had been made under a rule of the court; and it was never doubted that in such case an award might be made during the session of the court, accepted, and a valid judgment rendered thereon in the same term, notwithstanding the award was in fact made subsequent to the commencement of the session.

THACHER, J. The words of the statute are express that the report of the referees shall be made to the next Court of Common Pleas to be holden in the county, &c. If the word *next*, in this place, means any thing, it must mean next after the award made. Now, it appears by the record that the award was made on the 28th day of October; and it also appears by the record that the court which accepted the report, and rendered judgment upon the same, was holden on the 26th day of October, two days previous to the time of making the award. I am of opinion, therefore, that the second error is well assigned, and that the judgment must be reversed.

SEWALL, J. The error insisted on is that the report of the referees, conformably to the judgment complained of, appears to have been dated on the 28th day of October, whereas the term of the Court of Common Pleas, in which the judgment was rendered, commenced on the 26th day of that month.

[ *415 ] *The statute which provides for references, by the consent of the parties in any dispute, before a justice of the peace, has directed, "that the determination of the referees, who may be appointed, shall be made to the next Court of Common Pleas, to be holden in and for the county in which the justice of the peace lives, and the Court of Common Pleas to whom the report of the referees may be made as aforesaid, shall have cognizance thereof in the same way and manner, and the same doings shall be had thereon, as though the same had been made by referees

appointed by a rule of the same court." The form of the agreement, prescribed by the same statute, to be executed by the parties, is, in this particular, thus expressed: " the report of whom, &c., *being made as soon as may be to any Court of Common Pleas*, to be holden in and for the said county, judgment thereon to be made final."

Taking the whole together, and considering the analogy of these agreements and reports with rules and reports originating in the Common Pleas, as provided by the statute; and the manner in which the jurisdiction has been always exercised, my construction of the statute is, that reports by referees appointed by agreements before a justice of the peace are to be made, as soon as may be after their formation, to the Court of Common Pleas for the same county which shall be then, or next in point of time, *in session.* I think this construction reasonable in itself and warranted by the words of the statute; combining, to discover the intention of the legislature, the two clauses which I have cited. The like method of construction was adopted, in this Court, in determining a question, very similar to the present, whether the word " next," in the first clause cited, related to the appointment of the referees, or to their report. It was determined, chiefly upon a consideration of * the words cited from the agreement of the [ * 416 ] parties, that the relation was to the report, because any other construction would be a limitation of the authority of the referees, unnecessary, and contrary to the tenor of the agreement of the parties. The construction now suggested is justifiable upon the same ground, as tending to prevent delays in the final establish ment of the report of the referees, equally unnecessary, and contrary to the tenor of the agreement in which the parties are supposed to have consented. The error insisted on against the judgment before us, is the supposed effect of a legal fiction, whereby the term of a court is reckoned as one day, denominated from the first day of the term, whatever may be its continuance. Fictions of law are allowable and to be favored when they operate to the furtherance of justice; but when they operate to its hinderance and delay, are to be applied with great strictness and caution, and in many instances may be wholly avoided, by contrary averments. But in the construction of a statute, I cannot for myself imagine that the legislature had in view a fiction of this nature, which is scarcely known in the community, excepting to the immediate practisers and professors of the law.

There is to this error assigned a further answer, from a consideration of the general extent of the jurisdiction of a Court of Common Pleas, and the rules of law applicable to jurisdictions of that

311

description. Every Court of Common Pleas, in its respective county, has cognizance of all civil actions exceeding the value of *forty shillings*, (*a*) arising or happening therein, triable by the common or statute law, and has authority to give judgment and award execution accordingly. To a court thus authorized the [ * **417** ] rule of the law respecting * the superior courts at *Westminster* may be, I think, suitably applied—"That every thing done by them is supposed to be done within their jurisdiction, unless the contrary especially appears." 1 *Bac. Abr.* 559, cites *Carth.* 11, 12. By the statute of references before a justice of the peace, this general jurisdiction in civil actions may be employed in the same manner, and with the same effect, by the process therein appointed, as in other forms. The subject matter, therefore, being a demand in the nature of a civil action, arising within the county, brought before them by a lawful process, is within their general jurisdiction ; and in this view the question is not so properly whether the court, in this instance, had a jurisdiction, as it is whether they have administered their authority in a lawful and unexceptionable manner. The report, upon which the judgment complained of was rendered, consists of several certificates by the referees. One certificate, of a date preceding the commencement of the term of the Court of Common Pleas in which the judgment was rendered, ascertains the damages, and in fact the whole award reported by the referees. The after certificate—that on which the present question arises—is merely a refusal by the referees at another meeting, holden upon the intercession of the plaintiff in error, to reconsider or alter their former report. There is, therefore, nothing in this record which manifestly prevented the jurisdiction of the Court of Common Pleas, or their exercise of it, at the particular term, when the judgment was rendered, upon any construction of the statute which has been attempted.

The decisions which have been cited and relied on by the plaintiff in error, (as well the decision in *England* as certain decisions in this Court,) were had in cases differing, as I conceive, very essentially, in the nature of the jurisdiction there exer- [ * **418** ] cised, * from the case before us. In the cases cited, the jurisdiction, avoided, was special and against common right. In this light, the discharge of a debtor lawfully *committed* for the satisfaction of his creditor, and decisions of Courts of Session for the establishment of highways to the privation of individuals, are, in my opinion, to be considered. Authorities of this kind

(*a*) Act of July 3, 1782, (*stat.* 1782, *c.* 11.) By the act of March 11 1784, (*stat.* 1783, *c.* 42,) they have not jurisdiction unless the damages demanded exceed *four pounds*.

must be strictly pursued; else the rights upon which they operate are not taken away. In the case before us, certain existing rights, ascertained by a lawful process, have been confirmed and enforced by a judgment of a court having a general jurisdiction in the subject matter, and in the course certified to us by the process before us. Upon the whole, my opinion is against the reversal of this judgment for the error assigned and insisted on by the plaintiff in error, and which, therefore, has been the only one particularly considered in the discussion; though in this opinion I have the misfortune of dissenting from a majority of my brethren.

SEDGWICK, J. This is a writ of error brought to reverse a judgment of the Court of Common Pleas, whereby a report of referees, on a subject submitted to them by these parties, according to the statute in that behalf, was accepted. The report was made on the 28th day of October, 1802, and the term of the court, at which the report was accepted, commenced on the 26th day of the same October. We cannot know from any part of the record, nor is it indeed pretended, that the date of the report is not the true time when it was made. The report made on the 28th of October is the report which was accepted by the court, and judgment rendered thereon is that of which the writ of error in this case complains. It is, then, of no importance what had been done previously by the referees. The only question, for the decision of the
Court, is, whether a report made by the * referees could, [ * 419 ] by law, be accepted by the Court of Common Pleas at a
term which had commenced before the report was made. This depends on the construction of the statute; it being always remembered that these proceedings are unknown to the common law, and authorized only by the statute. Now, the only authority which the Court can exercise is on a report which is expressly to be " made to the next Court of Common Pleas holden in and for the county in which the justice may have lived." Such court alone has authority; *the next court.* And the word " next " relates *back* to the time of the report, and *forward* to the term of the court. Now, it requires no argument to prove that a court holden on the 26th day of a month, is not a court holden *next* after the 28th day of the same month. Whether the legislature had any good reason for giving to the Courts of Common Pleas, which should begin their session *next* after the report is made, a power to accept it, is not necessary for this Court to determine; it is sufficient that it is so declared. To decide otherwise would, in my opinion, be to make a new law, and not to pronounce the meaning of the legislature. In my judgment, however, there was good reason for the provision that the report should be made to the *next* court. I have all the

respect for the reports of referees to which, in my estimation, they are entitled ; but I cannot deem them infallible.   It is possible that referees may be mistaken ; it may even be conceived that they may be corrupt.   Those, therefore, who may deem themselves aggrieved by their reports, ought to have sufficient time and opportunity to mature and exhibit their objections ; but this will be denied if a court in session at the time the report is made may accept and render judgment on it.   And again, if the power of accepting reports be not limited to the court *next* after they shall be made, [ *420 ]  *but if it be competent to *any* court to accept them, to which they shall be " made as soon as may be ; " then, at *any* time thereafter, and when those who have objections against them may suppose they are abandoned, the court may, without affording any opportunity to objections, give them validity and effect. The mischiefs of such a construction would, in my opinion, be incalculable.   In addition to the reasons which have been given, there are two cases, in the county of *Middlesex*, one in 1799, and one in 1803, where judgments of the Court of Sessions have been reversed for, as I conceive, the same reason which is given in the case now under consideration.   In the cases in *Middlesex*, the reports of the committees to lay out highways were made to courts holden at the time the service was performed, and when the reports were dated. In the instance of highways, the committee is to " make return to the next Court of General Sessions to be holden in the same county, after the service is performed."   In that of referees, the report is " to be made to the next Court of Common Pleas," &c. (*stat.* 1786, *c.* 21, § 3.)   Now, it is impossible for me to perceive a difference in the two cases ; and that, in the former case, " next after " means a point of time future ; but that, in the latter, " next " means either the present time, or as soon " after " (not *next after*) *as may be*.   In the case, too, of *Brown* vs. *Compton*, the judgment of the court which was pronounced with great reluctance from the hardship on the defendant, went on the same construction of a statute.   [Here the judge stated that case at large.]   On the whole, I have no doubt that the judgment of the court below must be reversed ; and in this opinion it is understood that the *Chief Justice*, who was present at a former argument, concurs.          *Judgment reversed.*

No costs allowed, the reversal being for *error in law.* (1)

(1) Vide S. P. vol. ii. 167, *Nelson* vs. *Andrews*, and vol. v. 524, *Southworth* vs. *Bradford.*
NOTE.—By the *stat.* 1786, *c.* 67, § 4, the committee to locate a county road must render their report to the Court of Sessions holden *next* after the performance of their service, and the proceedings were quashed in a case where the committee finished their service and sealed their return on the 26th August, and made their return to a court then sitting, and which commenced its term on the 22d of that month —Vol. vi. *Commonwealth* vs. *G. Barrington.*